et al. I don't think we've ever had a case before where we're hearing exclusively from friends of the court. May it please the court, Joel McHugh as amicus curiae on behalf of the appellants. If you could raise that mic a little bit, thank you. With the court's permission, I'd like three minutes for rebuttal. The court asked for a briefing on four issues in this case. I plan to focus primarily on two of those issues, the question of appellate jurisdiction and the district court's prohibition against inmate joinder under Rule 20. We're still having trouble hearing you. Oh, I'm sorry. I plan to focus primarily on two of the four issues that the court had asked the parties to brief in this case, the question of appellate jurisdiction and the district court's prohibition against inmate joinder under Rule 20. Unless, of course, the court has questions on the other issues as well. The first issue is appellate jurisdiction. The 14 pro se appellants jointly filed a complaint in the district court and submitted informal qualifications applications in support of that complaint. The district court severed the matter into 14 separate actions and ordered each appellant to file an individual amended complaint within 30 days. Gave them the option to? Well, yes, that's right. You would consider it withdrawn if they didn't. That's exactly right. Now, given the wording, should we look at the court's order as dismissing those other 13 or as severing the cases into separate cases? I read it as a severance, Your Honor, and I think that's how the district court intended it. Even though the word dismiss was used, in context we should understand it as a severance. Well, I think the effect was a severance because it didn't force any of the individual appellants to refile their actions. The district court opened a new case for them, although it may be somewhat of a hybrid of a dismissal and a severance because the district court did for the appellants what they would have done had it been a dismissal. It opened the new actions, assigned new case numbers. But the case would go away if they didn't do something. That's absolutely right. Under the language of the district court's order, they have 30 days in which to file individual amended complaints, and without further notice, the cases would then be terminated if appellants did not amend. Of course, Hagan's case would not be terminated. Hagan's case would continue. I'm not sure I would read the district court's order that way, Your Honor. It looked to me as if the district court ordered Mr. Hagan to file an individual amended complaint as well. I don't think so. They didn't say Hagan. They specifically named all those other than Hagan as dismissed from this action. But Hagan's case would continue. Well, Mr. Hagan would have to. Well, I believe the district court's, if not in actual words, the effect was that Mr. Hagan would have to proceed individually as well. But his would stand, and he wouldn't have to file anything. But that complaint was filed jointly by all 14 of the appellants. I'm not sure that Mr. Hagan, it wasn't his individual complaint, that initial complaint. That was the complaint by all 14 appellants. Right, but the court can dismiss plaintiffs from actions, and that's actually what the court did here. Plaintiffs Hemphill, Esquilin, Mark, Weiss are dismissed from this action. But Hagan is not dismissed. Right, but I thought the question is whether or not Mr. Hagan's action would also terminate after the 30 days failure to file an individual amended complaint. I don't think it would. Which certainly doesn't look like it would, since that case wasn't dismissed. Right. Well, in terms of the order. Talk about the dismissed plaintiff. Oh, now, right, it does say, order that within 30 days, the remaining plaintiff in this case, Hagan, and each of the dismissed plaintiffs may indicate his intent to proceed. If Hagan or the dismissed fails to file, it will be deemed withdrawn. That's absolutely right. Page 6 of the record. So he's basically, how do we have a final order here? Well, primarily, Your Honor, it's because appellants elected stand on the complaint as jointly filed. Where is that election in the record? Well, the election is under this court's case law. The district court afforded appellants 30 days in which to amend. But that's been stayed. That order has been stayed. Well, that, Your Honor, is a separate issue. The 30-day period, appellants had 30 days in which to amend. They didn't do so. Under this court's case law, that order can be viewed as a final. But if the order is stayed, then the 30 days hasn't run. Well, now the district court entered that stay order some two months after the termination or the automatic termination of these individual complaints. So they have lost their right. Well, I think that's the ultimate effect, Your Honor, is if you stand on your complaint. It's so that there will be no piecemeal litigation in the future and that, therefore, they wish to proceed jointly. All right, so the stay order was entered after the 38 days, and so they lost that right. Okay. Then what was to be stayed? Well, the district court—there's, I suppose, two issues there, Your Honor. The appellants had filed the stay request, but they had filed the stay request, it appears from the record, in this court. And essentially, it looks like they were just asking that the statute of limitations not run on their claims while this appeal was heard. The district court entered its stay order, and it did that two months after the 30-day period had run on the appellant. What I'm trying to ask, Mr. McHugh, what do you think the district court had in mind in entering the stay order? On the one hand, you seem to be saying, yes, they stood on their complaint boldly because the court didn't enter that order until 30 days had already passed and, in fact, they were out of court. On the other hand, you seem to be saying, I think, that the district court was meeting their concern in making sure that the statute of limitations didn't run. I got it right? No, I don't know that the district court was meeting their concern because the district court's order addressed an issue that appellants did not seem to raise in their stay request. The district court, on its own initiative, seems to have afforded appellants an additional 30 days to file individual complaints after this court made a determination on class action status. The district court also sought to preserve what it called the time-sensitive nature of the appellant's claim. Which certainly sounds like you're talking about statute of limitations, right? Absolutely, but that was long after the termination of the individual. Why would you be worried about the statute of limitations unless you plan to refile a complaint? Well, the pro se appellants, Judge Roth, they sought to stay in connection with the filing of this appeal. I mean, they filed their stay motion literally in the same envelope that they submitted their notice of appeal in. Yeah, but if you want to stay the statute of limitations, doesn't that mean that you are considering going forward with an individual complaint? But you're not standing on the complaint, correct? I'm not sure that it should be interpreted that way, that these pro se appellants meant that. But if it can be interpreted that way, don't we have to? No, I think what the court needs to find is just adequate assurance that there will not be piecemeal litigation in this case. And I think the court has that because appellants chose to appeal rather than file individual amending complaints. Because appellants submitted a letter brief on appeal in which they jointly argued, all 14 of them, that the district court had erred in failing to consider their claims together. Could we consider this an appropriate interlocutory appeal because this is an issue that, unless it is decided now, could not be decided at the end of the case? I think the court could do that effectively because it's hard to imagine any of these individual appellants bringing this issue at the end of an individual action. Well, the right's been effectively lost because they've been required to proceed without being joined. Kind of like the right to counsel is lost if you're forced to proceed without counsel. It's effectively unreviewable. Yet you in the reply really didn't argue collateral order doctrine. Your colleague said it didn't apply, but you really didn't come back arguing that it does. Well, Your Honor, I mean, we submit the argument that the court has jurisdiction because of the appellant's decision to stand on the complaint. And there's one more reason why the court can conclude that they have stood on the complaint. After the filing of our amicus brief, the clerk provided the appellants with notice of the filing of our amicus brief, gave them the amicus brief, and gave them time in which to file pro se briefs and advised the appellants that if they failed to do so, they'd be deemed to have joined in the arguments of the amicus brief. You're not walking away from a collateral review, collateral order kind of foundation for jurisdiction, though, are you? No, I don't mean to, Your Honor. I'm sorry. Looking at the merits for a minute, how do we accept your argument and avoid the conflict that the Hubbard Court pointed out? I mean, how do you square section 1915b1 and subsection b3 on their plain language with the reading of Rule 20 that you want us to have? Right. Well, Your Honor, as the Hubbard Court itself noted at one point in its opinion, the court's goal should be to harmonize these various provisions and to find a repeal by implication only when there's clear intent of Congress's desire to do so. Well, don't you have to find a repeal when there is an irreconcilable conflict? That's the point I'm trying to get you to. The language of the statute itself says that in no event shall the filing fee exceed the amount of fees permitted by the statute for commencement of a civil action. That's very explicit. And it also says, that's b3, and in b1 it says that you're going to pay, as a prisoner, the full filing fee. Now, given those statements in the statute, how do you square that with joined or under rule? Well, b1, Your Honor, says simply that the prisoner shall pay the full amount of a filing fee. And we know that the full amount of a filing fee is something that Congress has already set by statute. We know from Section 1913 and 1914 for district court action and 1917 that it's $350 to file an action in the district court, $455 to file an action in the court of appeals, in any action, jointly filed or individually filed. So if we're looking to determine what the full amount of a filing fee is for purposes of b1, we should look for the statute that sets those fees. Well, that would be great if the statute just said, the filing fee shall be paid. I guess we wouldn't be having this argument. But it doesn't say that. It says the prisoner shall pay. It doesn't say the prisoners collectively or the prisoner in another frenzy's got. It says the prisoner shall pay the fee. How do we get away from that? The court doesn't need to get away from it. I think the court should look to that language and embrace it. In fact, I don't think it needs to be read to require each prisoner in every case to pay a full fee. Because of subsection b3, the Boroban court, for instance, correctly read Rule 20 as allowing prisoners to seek joinder but then determined that each prisoner in that joint action must pay a full filing fee within that action. But that clearly would violate b3, subsection b3, which focuses the court's attention on the statute. And by statutes, Congress has set the amount of the fee for any jointly filed action in the district court. So we will now have a three-way circuit. Because you don't agree with Boroban and obviously don't agree with Hubbard, we would go our own way and say there is no real conflict but we will split the fee. And then the Supreme Court can take it and confuse it even more. Well, hopefully not. I'm just hoping that the court can reach the correct interpretation of these statutes and harmonize all of them together. I think the problem with the Hubbard and Boroban analysis is they don't look to the provisions that Congress has enacted that clearly set the amount of the fee for any jointly filed action or appeal. Well, when you say they clearly set for any jointly, I mean, didn't you just put the rabbit in the hat there? The point here is Congress, specifically in this Prisoner Litigation Reform Act, was at pains to see that prisoners had some pain if they wanted to file a suit. I mean, that seems to be, both by legislative history and even if you ignore the legislative history, the plain terms of the language to mean you don't get, even if you're under an IFP statute, you don't get the file unless you are going to pay the freight, even if that freight is paid out over time. Because if we don't have you do that, we're putting the system at risk of frivolous litigation on a large scale. Now, whether you agree with Congress or not, would you agree that that's the policy implication of the statute?  Have prisoners bear some responsibility or burden or to think twice before they file what may prove to be a frivolous one? So if that's the policy implication, isn't it fundamentally inconsistent with that policy implication to say, well, if you can get your friend Big Hank to go around and scare enough prisoners to join the complaint so that maybe 60 guys are filing instead of one, then we split it up and everybody only gives up three cents a week so good for everybody. Is that the invitation you're asking us to extend to the prisoners in the Third Circuit? No, Your Honor. What I'm asking you to do is to apply the statute as written. The best indication of Congress's intent is in the language used in adopting these provisions. Quite so. So if we apply it as written, how do I get away? How does this panel get away from that language? And maybe there's not a good answer for it, which is why I'm not hearing it, but the language of B-1 says, the prisoner shall file the fee. That seems to me to say, in very plain language, you, the prisoner filing this, are going to pay the whole fee. How do you get around that language in B-1? And Joinder doesn't change that. Because it doesn't, well, that particular language uses the single, the prisoner. It doesn't, on its face, take account of multiple prisoners proceeding or more than that. But it doesn't say it doesn't apply. So if they want Joinder, it comes with a price that each of them has to bear the weight, because they each have a claim. They're joined together, but they each are bringing this suit, are they not? Does Joinder somehow transform this into a case not filed by each of these prisoners? Absolutely not, Your Honor. But B-1, as Judge Jordan pointed out earlier, has to be read in conjunction with B-3 as well, which limits the amount of the fee that can be collected to the amount permitted by statute. By statute. Right. And your conclusion from that is that it can't really mean what it says when it says the prisoner, because that would mean you can't have joint suits. But maybe what it means is you can't have joint suits, and that both B-1 and B-3 mean exactly what they mean. Well, or it means that you can have joint suits and the fee should be apportioned among the prisoners who were still bearing some financial burden. How do you get there with the language of B-1 unless you ignore the plain language of B-1, which speaks in the singular? Your Honor, it applies, it can be read to apply then to prisoners collectively, and when Congress uses the singular in a statute, if it's that clear, Congress is also, I believe under Title I of Section 1, intended to use the plural as well. So it can be read to mean that the prisoners shall pay the full amount of a filing fee. The full amount of a filing fee. Well, I mean, maybe free could be read, in no event shall the filing fee collected from each prisoner exceed the amount of fees permitted by statute to the commencement of civil actions. Each one of them is, in essence, I mean, I guess they're joining to bring a civil action, I guess it clearly wasn't anticipated that they're free is the answer. That's right. And if they each pay the full amount of the filing fee in one action, then they will pay more than what the statute requires, as I believe even the state agrees in its brief. If you step aside from the B-1, B-3 challenge, and you look at the basis on which Judge Chester is looking at, what's wrong with his reasoning? I mean, he lists a series of things that he says make it worse than impracticable to allow joining the state. Why should we not defer to that judgment? Well, I don't think any difference is owed in terms of the standard of review, because it's really about Judge Chester's interpretation and application of the rules of civil procedure. Well, didn't he say, I'm looking at Rule 20, and Rule 20 allows me to take into account these other things, so I guess at that point it's strictly legal. And then he says, I take these other things into account, and I think it doesn't make sense at all. Is he wrong at the legal point that he's allowed to take into account the impracticality? I think he's wrong at the legal point to the extent that he looked at Rule 20 and said, although Rule 20 says persons may join in one action, I'm going to read Rule 20 and read persons other than prisoners may join in one action. And that's the practical effect of Judge Chester's reading and his holding in this case. And then essentially what he did, he said, okay, then I'll look to Rule 21 and my power to sever actions, and I'll read Rule 21 to essentially require, under Judge Chester's analysis, there would be no prisoner's civil rights act in which multiple prisoners join where a joiner would not have to take place, because any prisoner can't join with any other prisoner because the impracticality, Judge Chester cited, under his reasoning, would be in every case. And that's effectively a rewriting of Rule 21. There's nothing in Rule 21 that says every prisoner case shall be severed into separate acts. And that's ultimately, it's a legal question, and it's about the district court's interpretation of these rules of civil procedure and applying different rules to prisoner litigation than should apply in any civil action as Congress has intended that the rules should apply. Would it be different if he said, well, I don't know, I suppose some day there could be a case where we could have many different defendants, but here are all the reasons why I don't think that in this case we have 10 defendants, therefore I'm going to allow it. Would that be potential? Would that be something that we would owe that question? I think that arguably would be within the district judge's discretion, Your Honor. It depends on the particular facts and circumstances of the case, but if the judge had looked at the situation faced by these particular inmate plaintiffs and made a determination based on their, the nature of their incarceration or their locations that they would not be able to proceed jointly and it would not serve the judicial economy, then I think the district courts could sever the action on that case. What was the timing between the filing of the complaint and the sua sponte ruling here? I believe the complaint was filed in October of 06 and the order was entered January of 07. And no real proceedings had occurred? The complaint was never served, exactly, Your Honor. It was screened under the PLRA and dismissed. I see my time is up. Okay, we'll hear from you on rebuttal. Thank you. May it please the Court, I'm Larry Yetzwaller, Senior Deputy Attorney General for the New Jersey Attorney General's Office. If you prefer to do your entire argument sitting, that's okay. Oh, thank you, Your Honor. I would prefer to stand. I appreciate your accommodation. Thanks so much. This case does not, for two reasons, this case does not present a vehicle for resolving the circuit split. First of all, this court lacks appellate jurisdiction. Second, this case doesn't fairly present the question of the circuit split, alluding to some of Judge Gordon's comments just a few minutes ago. Well, maybe we can create a new circuit split. Yes, Your Honor, but... As to jurisdiction. Right, as to the... But not on the conflicts question because what the judge below did was he did not resolve the conflict. He cited and discussed the conflict, but then at A11 in the appendix, he says regardless of the appendix, there are two cases which suggest that prisoners shouldn't be joined, that militates against joinder. He didn't say compels non-joinder. He said militates against joinder. And then he talked about the need for individualized treatment. He ruled mainly based upon the impracticalities. Is that correct? He didn't really look at the conflict. He didn't resolve the question of law as to whether in every case the Prison Litigation Reform Act prohibits Rule 20, joinder. He exercised discretion under Rule 21, and he cited the Rule 21 on the last page of his decision saying, now his discretion was informed by the principles of the Prison Litigation Act. There's no doubt he established a presumption that in general prisoners shouldn't join, but it was not any rebuttable presumption. Well, Mr. Etzfaila, how do you respond to Mr. Medue's statement that it was... He set more than a rebuttable presumption. He laid down a definitive interpretation of Rule 20 that said, in effect, all persons except prisoners. Your Honor, I see nothing in the opinion which states that, and I see several contrary indications. Why don't you point those out to us? Well, there's the use of the term militate on page 11. He says whether or not there was an inherent conflict between 1915b and Rule 20, at least two district courts have found that the impracticalities inherent in multiple prison litigation militate against permissive joinder. Didn't say compelled. But then he goes on to say on the next page, prisoners are not in the same situation as non-prisoner joint plaintiffs, semicolon. Prisoner's circumstances make joint litigation exceptionally difficult, and then points out and says that's... There's no question that he relied upon the Prison Litigation Reform Act to inform his discretion to say that generally, or maybe even almost always, Rule 21 would require severance, as he did, but he didn't address the question whether severance is inevitably required. He never talks in terms of these prisoners, does he? Yes, he does. He says the... Sorry, Your Honor, but if I can respond to that. Sure. On page 812, the adequacy of the claim alleged by each plaintiff is dependent upon his individual medical needs and the behavior of prison officials with respect to that individual plaintiff. I apologize. I should have been more specific. In terms of the Rule 20 and Rule 21 issues where he's saying this is why it militates against it, allowing permissive joinder, it's not case-specific commentary. It's broadly stated as to all prisoners, right? Yes. The fact that the Prison Litigation Reform Act generally militates in favor of Federal Rule 21 disjoinder, is that the term? Nonjoinder, I think, is the term. It's clearly in this opinion, but there's not... There is no... From this opinion, there may, in fact, be unusual cases where the degree of culpability alleged against each official is the same and the requisite amount of harm is the same, whereas he would then have to confront the circuit split. He hasn't confronted that. He has eschewed confronting that split. How... If we were to rule the way you've suggested, how would... Well, let's assume for the sake of discussion here that the individualized problems which were identified by the district judge and the director were not the point, that the gravamen of the complaint was, we have a widespread parasitic skin infection and they are refusing to do anything to address it, period. So it's affecting everybody in the building, all of us, and we need help because we can't get them to pay attention to this significant problem. Is the interpretation that Judge Chesler gave to the rules preventing legitimate claims affecting broad portions of the prison population to come to the federal courts for release? I think he didn't answer that question, Your Honor. I think if... Is it the effect? Whether he answered it or not, is the effect of his ruling to prevent that? No, Your Honor. If that situation arises, then he's going to be confronted with a circuit of conflict. Well, but under United Mine Workers v. Gibbs, enjoinder and judicial economy is preferable, but what we have here is we're going to have 15 individual suits all talking about precise same air and condition in the precise same building. Is that really what Rule 20 and Gibbs... Combined with the Prison Litigation Reform Act, yes, Your Honor. That's a perfectly reasonable exercise of Rule 21, non-enjoinder. Is it reasonable from our point of view as the judges who are going to have to sit and deal with 15 cases rather than one case? Well, of course, Your Honor. He doesn't... I think, as I recall, he goes on to talk about the possibility of adjoining these for trial. And so... Well, I mean, the pre-trial preparations can be equally, if not more time-consuming on the court than the trial itself. No, but they can be consolidated as well, and the district court has mechanisms for controlling the calendar and for facilitating this type of problem. Well, it seems like the analysis of the district court flew through the Rule 20 standards as to the type of situation where a joinder, permissive joinder, is allowed. And this seems like a typical-type situation. They're all complaining about the same situation. And his individualized concern as to the medical need and extent of injuries... We have cases all the time where everyone's complaining of the same thing, but someone has a skin irritation and someone else has something more severe. Does this reasoning really... Does it really flow from Rule 20? From Rule 21, Your Honor, not from Rule 20. And we would submit that it's certainly not an abuse of discretion in view of the principles of the prison litigation reform act. Should I speak briefly about the jurisdictional question as well? Please do. I don't want to divert the court's attention. Please do. How about the notion that they stood on their complaint? Respectfully, Your Honor, they did not stand on their complaints. Their appeal was captioned as a notice of interlocutory appeal. They were sufficiently good in lawyering to realize that this was not a final judgment. Their briefs and documents submitted to you address primarily the merits of the case and manifest their intent to proceed to the merits of their claim that they're being subjected to cruel treatment. But isn't this appeal about joinder issue? It's not your standard, oh, here, you can replead because you didn't plead a sufficient pleading. It is, I am prohibiting you from being joined, and you shall now all proceed separately. Doesn't that become effectively unreviewable on appeal because everyone has then had to proceed independently, and their right to be joined is effectively lost if it's not reviewed? No, Your Honor, this doesn't, the other amicus didn't argue in favor of the Cohen Final Order Rule. Well, we will determine jurisdiction. It doesn't really matter what they argue. I absolutely agree with Your Honor, and that was not an appropriate response. Let me respond to Your Honor's question. This question is capable, if these plaintiffs prevail in their cause of action, then they will receive costs, and it won't be reviewable, but that's great because the purpose of avoiding piecemeal litigation is to avoid these questions until they concretely arise. If they lose, and that's no different from any other Cohen Final Order, if they lose, they will then have an appeal not only from the merits of their loss, whatever it's based upon, whether it's insufficient evidence, but also from their obligation to pay the full filing fee. The appeal from a final judgment brings before the court the validity of all interlocutory orders. Justice Feiler, doesn't that sort of narrow the notion of proceeding jointly to just the issue of filing fee? I mean, is that the only advantage of avoiding a fee? No, the possibility within the complexities of the prison litigation and the fact that these prisoners may not be together, sometimes there is value and sometimes there's disservice in having joined their offices. But if they wanted to be joined and they saw the benefit of all working together and joint discovery and joint representation and moving forward together, that is lost if each of them has to proceed separately. They could be consolidated for trial and they could be consolidated for discovery. If you're consolidated for trial, you still have a burden as a plaintiff in each case to do your homework, to do your own discovery. And your Honor, if that significantly impacts upon the success, that too is an appealable issue from an adverse final judgment. But it's over. I mean, that's the whole point. I think I understand your position, but I'm having a hard time getting my head around the idea that you can appeal at the end that you didn't get to proceed jointly and that somehow that'll be remedied because their filing fee might get refunded to you, which seems to me to ignore all these other things that Judge Lindell and I have been mentioning about perhaps advantages of proceeding jointly that have nothing to do with the money associated with the filing fee. No, your Honor. Filing fee is one clear basis for getting up there, but there's also the contention that the joinder was either abuse of discretion, if you view it as a Rule 21 exercise of discretion, or a mistaken exercise, mistaken application of law if you view it as a conflict, and that that joinder determination adversely impacted upon the litigation in preventing this plaintiff from coming to a successful final judgment. So your suggestion is that somehow... It's... All right, I think I understand. It's very similar to any other exercise of discretion on a district court ruling. Well, no, not in this respect. That the right itself can never be recovered. In other words, you've proceeded singly through the whole case. The fact that you may win at the end on that point doesn't get you to tie more backwards and do the things you might have done if you were proceeding jointly. All the things that Judge Chesler points out about why it's impractical to allow this to happen in a prison setting, at least in this context, I don't seem to argue against your position, Mr. Etzweiler, because they are the things people want to do. They want to get together. They want to talk about their case. They want to jointly brainstorm. They want to proceed by dividing up the burden of proceeding, all of which is lost if they have to proceed singly, right? And there's a few responses. The record, the post... The appellate record, the post-trial record shows that that would have been impossible in this case because, as is typical of prison population, these prisoners are now scattered. Their ability to come together and to join in the litigation... I'm not arguing that. I think, as a practical matter, the discussion by Judge Chesler seems very cogent. The point I'm trying to put to you, and I think I've got your position, is that none of that answers, indeed, it maybe goes against, your position that this is not a collateral order. That's correct. This is an even stronger basis for not being a collateral order than most interlocutory orders because whatever happens, the quantum of the fee retains and it remains as an appealable issue even if these prisoners can't show prejudice from the requirement to have proceeded separately. So this is not a matter which is incapable of review. What about the certification of the class action? Is that reviewable? It is, but there's no reason to exercise discretion for doing so. Number one, even if you did so, that would not give you pendant appellate jurisdiction over this question. There's been no showing. But number two, as I understand, the only contention for which you should review that is if the judge entered this order too quickly and there was a possibility down the line that when a counsel is appointed then it may be appropriate for class certification. But if that happens, Rule 23C1C affords the judge the opportunity to look at it again de novo. There's no reason for you to simply remand the matter and say look at something which the judge is allowed to do under Rule 23C1C in any event because by the rules this is interlocutory and subject to review again. Well, he denied it pretty... Request for certification is denied. Yes, sir. My time is up. Does the court have any more questions? You know, let me say one thing that surprised me is why doesn't the state of New Jersey get a bunch of gallons of bleach and go in and clean up this facility so that the scabies mite is obliterated? You know, I've had dogs with mange and I know what scabies is and I know what you can do to get rid of it and if it's there, it is a god-awful nuisance but it's something that can be easily controlled and so why don't they just simply make this case move? Your Honor, I confess I'm not aware of the underlying circumstances for the 12B6 standards. We have to accept the allegations as made but if Your Honor looks at the appellate briefs and looks at the individual the appellate papers where each prisoner talks about the treatment mechanisms that were afforded to him it's clear that this was even they admit things happened it just wasn't enough it wasn't as much as they wanted. Well, it's not the treatment it's getting rid of the mites that's important. Yes. You know, the treatment alleviates the itch but getting rid of the conditions in the surroundings that allow the mites to proliferate is what would make this case move. If the facts were fully as they described them it would be a sound exercise of Department of Correction expenditures to spread the leach. I agree, Your Honor. Sure. Sure hope that maybe that word gets back. I'm sorry, Your Honor? Certainly hope that word gets back somehow. Yes. It will get back to me, Your Honor. Does the court have any more questions? That's it. Thank you very much. Thank you so much. On the issue of appellate jurisdiction, Your Honor and the collateral order doctrine I agree with what I think Judge Jordan was suggesting was that it's impractical for these inmates to litigate individually and then at the end of that litigation raise the question or initial on appeal that says the district court Judge Chesler erred by dividing us all into separate actions now afford us relief. Yeah. The court of appeals as a practical matter is not going to be able to rejoin all these cases and give the relief that these inmates deserve. I hear that argument. You did not really address it in your reply and I am not finding any good case law on appeals from denial of joinder as being subject to collateral order doctrine. To my mind it should be. It seems like it's the lost you know, you're right it's effectively lost and unreviewable. I may want some further briefing on this issue because I think it's a pretty important We'd be glad to provide that information. Let me make the timeline clear. The order came down from the court of appeals and then within 30 days didn't your clients move for a stay within the 30 day time period? Yes. They moved for a stay and filed the notice of appeal at the same time within the 30 days. They put them in the same envelope and correctly mailed them to the court of appeals and you know So they wanted to stay. They weren't that to my mind didn't say specifically withstanding my complaint. Right. I mean we're dealing with pro se litigants here Your Honor and I'm not sure that they maybe had considered the entire impact of their request for a stay on whether or not their appeal could go forward and you know whether or not the district court would then restart the 30 day period in which they could file So the district court did that somewhat gratuitously in the stay order. Is that correct? Give the additional 30 days? I think that's right and I think it's right also because the district court stay order doesn't actually adjudicate the appellant's stay request. I'm not entirely sure that the district court ever even saw an appellant's stay request. The district court just enters this order months after the period. Now if we decide the appeal and we affirm Judge Chesler what happens then? Maybe we've already decided. Maybe we've already answered this question. If you reach the merits of the appeal and appellants have stood on their case,  have to make a complaint. Judge Chesler will need to decide. Whether his order stands that gave them an additional 30 days or not. Right. I mean that'll be a potential future issue. On the question of whether or not the district court weighed in on the circuit split on the Rule 20 issue, the district court clearly weighed in on that. Your Honor, by adopting these two district court opinions, the one from Montana and the one from Wisconsin, the Swenson case adopts the 11th Circuit position on this issue in Hubbard. So the district court found the Swenson case persuasive and it found the Wasco case persuasive. But they're on the impracticalities of prisoner litigation. On Borabone and on Hubbard, he says whether or not there is an inherent conflict, at least two district courts have found impracticalities and that's more... Right, Your Honor, but that Swenson case that the district court finds persuasive looks at Borabone, looks at Hubbard and says I'm going with Hubbard. And so the district court... But Judge Tesler wasn't looking at it for that purpose. He's explicit in saying I'm looking at these cases from Wisconsin and from Montana, thank you, for the analysis they give to the impracticalities. I mean he says it straight up, doesn't he? Yes, although he does absolutely look at it for that purpose. And the ultimate effect of Judge Tesler's order is to adopt the Hubbard analysis, to require that in every case prisoners be divided into separate actions and each pay a full fine. And that's precisely what he wanted. That's the effect, but that wasn't the basis really for his ruling. Right, but I'm not sure what other effect it's going to have in future cases other than to require application of the Hubbard rule in the district of New Jersey or at least before Judge Tesler. Thank you very much. Thank you, counsel. The case was well argued, taken under the pre-judicial       ask for         20-21   PAPERS PAPERS PAPERS PAPERS PAPERS PAGES PAPERS PAPERS PAPERS PAPERS PAGES PAGES PAPERS PAPERS   PAPERS PAPERS PAGES   PAPERS PAPERS PAPERS PAPERS PAPERS             PAGES PAPERS PAPERS PAPERS PAPERS PAPERS One.